# Exhibit "A"

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

Fannie K. Bloodworth (hereinafter, "Bloodworth") and Open Hearts Personal Care Homes, LLC, and Dianna A. Clarkson ("Company") (Bloodworth and Company may be collectively referred to herein as the "Parties" or individually as a "Party") hereby agree upon a settlement of all issues involved herein, and as described in this Settlement Agreement and General Release ("Agreement"), this 24th day of September, 2017 ("Effective Date"), as follows:

## RECITALS

**WHEREAS**, Bloodworth filed that certain civil action in the United States District Court for the Northern District of Georgia civil action number 1:17-cv-01373-LMM ("Complaint"), in which she asserted claims under the Fair Labor Standards Act ("FLSA");

**WHEREAS**, the Company denies the allegations asserted by Bloodworth as set forth in the Complaint. The Company believes that Bloodworth was properly compensated and, therefore, that Bloodworth is not entitled to overtime pay. The Company believes that it acted in good faith and, therefore, that Bloodworth is not entitled to liquidated damages. The Company further believes that it complied with the FLSA;

**WHEREAS**, by this Agreement, the Parties desire to settle, fully and finally, the claims that could arise under the FLSA; and

**WHEREAS**, the Parties have also separately negotiated and reached an agreement on a general release of claims and limited confidentiality specifically related thereto.

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual terms, covenants, and conditions hereinafter set forth, the Parties agree as follows:

1.     **Settlement Amount for FLSA Claim**. As consideration for Bloodworth's release of her FLSA Claims, the Company will pay Bloodworth and her attorneys the gross sum of $4,750 (the "FLSA Settlement Amount"). The FLSA Settlement Amount is being paid in settlement for Bloodworth's FLSA Claims, and her attorney's fees and costs.

The Parties agree that the FLSA Settlement Amount will be paid as follows:

a.     The Company will pay Bloodworth the gross amount of $750 as full compensation for Bloodworth's overtime claim. All necessary deductions and withholdings will be made from this payment, and this amount will be reported on a Form w-2 issued to Bloodworth.

b.     The Company will pay Bloodworth the gross amount of $750 as full compensation for Bloodworth's liquidated damages claim. No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Bloodworth.

c.      The Company will pay the Vaughn Law Firm, LLC the gross amount of $3,250 for attorney's fees.  No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to the Vaughn Law Firm, LLC.

The consideration set forth above is in full and complete settlement of Bloodworth's claims under the FLSA as alleged in the Complaint.  Section 1(a) FLSA Settlement Amount shall be due and payable to Bloodworth.  Sections 1(b) and 1(c) of FLSA Settlement Amount shall be due and payable to the Vaughn Law Firm, LLC attorney trust account.  Bloodworth and her counsel agree not to seek any additional attorneys' fees, costs or expenses from the Company in connection with the matters alleged in the Complaint or which could have been alleged in a complaint.

**2.      Release of Claims under the FLSA by Bloodworth.**  In consideration of the FLSA Settlement Amount described in Section 1 of this Agreement, Bloodworth releases and discharges the Company from any liability for claims and damages allegedly arising under the FLSA, including the Overtime Claim and the Liquidated Damages Claim.

**3.      Settlement Amount for General Release and Limited Confidentiality.**  As consideration for Bloodworth's general release of claims against the Company in Section 7 of this Agreement and for the limited Confidentiality of this Agreement in Section 10, the Company will pay Bloodworth the gross sum of $500 (the "General Release Settlement Amount").  No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Bloodworth.

The consideration set forth above is in full and complete settlement of Bloodworth's general release of claims against the Company and limited confidentiality terms.  The General Release Settlement Amount shall be due and payable to the Vaughn Law Firm, LLC in accordance with Section 4 of this Agreement.

**4.      Payment Schedule.**  The FLSA Settlement Amount and the General Release Settlement Amount will be paid upon the later of seven (7) days of the Court's approval of the Joint Motion for the Approval of the Settlement Agreement or the expiration of the revocation period as set forth in Section 8(d).

**5.      Court Approval.**  The Parties shall execute and submit to the U.S. District Court for the Northern District of Georgia (the "Court") a joint motion for an Order approving this Agreement and entering a stipulation of judgment dismissing this case, with prejudice, as well as any other appropriate form(s) required by the Court to cause the dismissal of the Complaint with prejudice and closure of all matters referenced in the Complaint. The Joint Motion for Approval of Settlement and Stipulation of Judgment Dismissing Case, shall be filed within seven (7) days of the Effective Date of this Agreement.

**6.      Tax Liability.**  In paying the amount specified in Section 1 or Section 3, Company makes no representation regarding the tax consequences or liability arising from said payments. Bloodworth understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is her sole responsibility, and that she will pay any such taxes that may be due or become due. Bloodworth agrees to bear all tax consequences, if any,

attendant upon the payment to her of the FLSA Settlement Amount and the General Release Settlement Amount.  Bloodworth further agrees to hold Company harmless from and against all valid tax or tax withholding claims, amounts, interest, penalties, fines or assessments finally determined to be valid by any taxing authority or governmental agency with regard to the FLSA Settlement Amount and the General Release Settlement Amount. In the event Company receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against Company, Company shall promptly, after receipt of such written notice, notify Bloodworth by letter sent to counsel for Bloodworth.

7.   **General Release by Bloodworth.**  In consideration of the General Release Settlement Amount described in Section 3 of this Agreement, Bloodworth (for herself, her agents, assigns, heirs, executors, and administrators) releases and discharges the Company (including its officers, owners, principals, members, employees, agents, representatives, attorneys, or officers) from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature whatsoever, known or unknown, in law or equity which arose at any time from the beginning of time to the date Bloodworth executes this Agreement.  Without limiting the foregoing general release, Bloodworth understands that this general release applies, but is not limited, to: all claims arising out of Bloodworth's employment relationship with the Company, the cessation of that employment, the compensation or benefits payable in connection with that employment or the cessation of that employment and/or any other interaction with Company, including, without limitation, (a) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*; (b) The Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101*et seq.*; (c) The Equal Pay Act, as amended, 29 U.S.C. § 206, *et seq.*; (d) The Lilly Ledbetter Fair Pay Act of 2009; (e) The Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq.*; (f) The National Labor Relations Act, 29 U.S.C. § 151, *et seq.*; (g) The Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 *et seq.*; (h) The Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et seq.*; (i) The Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*; (j) The Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq.* (the "FLSA"); (k) The Occupational Safety and Health Act, as amended, 29 U.S.C. § 651, *et seq.* (l) The Age Discrimination in Employment Act, 29 U.S.C §621, *et seq.* ("ADEA"), (m) the Older Workers Benefit Protection Act of 1990, 29 U.S.C. 626(1), *et seq.* ("OWBPA"), (n) any agreement, representation, promise, understanding, policy, practice, plan, or potential entitlement (regardless of the source); (o) past or future wages, severance, compensation, vacation pay, holiday pay, meal or rest breaks, overtime, benefits, bonuses, commissions, fringe benefits, reimbursement of expenses, or other forms of consideration, payment, or remuneration, except for claims to enforce payment of those sums explicitly identified in Section 1 or Section 3; (p) breach of contract; (q) intentional and/or negligent infliction of emotional distress; and (r) any other federal, state, or local law, whether arising or emanating from statute, executive order, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing.

Bloodworth further waives any and all rights to participate in a class or collective action alleging violations of any of the above laws, including those brought under the FLSA, and Bloodworth further covenants and agrees not to accept, recover or receive any back pay, front pay,

liquidated damages, other damages or any form of relief based upon any claims that have been asserted or could have been asserted or settled in a lawsuit that may arise out of, or in connection with, any other individual, class or administrative remedies pursued by any state or local governmental agency against Company.

IT IS THE INTENT OF BLOODWORTH TO RELEASE ALL CLAIMS OF EVERY NATURE AND KIND WHETHER KNOWN OR UNKNOWN, ACCRUED OR NOT ACCRUED, WHICH BLOODWORTH HAD OR MAY HAVE AGAINST THE COMPANY AS OF THE DATE OF THE EXECUTION OF THIS AGREEMENT.

This Agreement shall not apply to any provision of this Agreement that may be interpreted to waive, release, or extinguish any rights that, by express and unequivocal terms of law, may not under any circumstances be waived, released, or extinguished, including any other claim which cannot be released by private agreement.

8. **OWBPA/ADEA Waiver.** By signing this Agreement, Bloodworth specifically releases and waives any right or claim against the Defendants arising out of her employment or termination of employment by Defendants under the ADEA or OWBPA. Further, by signing this Agreement, Bloodworth acknowledges that:

a. this Agreement is written in a manner that she understands;

b. she has been advised to consult and has consulted an attorney before signing this Agreement;

c. she has been given twenty-one (21) days from receipt of this Agreement to consider whether she wishes to sign it. If she signs the document during this twenty-one (21) day period, the signature will be deemed to be knowing and voluntary and not induced by fraud, misrepresentation, or a threat to withdraw the offer during the twenty-one (21) day period; and

d. she shall have seven (7) days after the Effective Date of this Agreement to revoke this Agreement. If she revokes, the Agreement shall not be enforceable and she shall not be entitled to the consideration stated above. To be effective, the revocation must be in writing and received within the seven (7) day period by:

Lisa Y. Bowman, *Esq.*
1050 Crown Pointe Pkwy
Suite 500
Atlanta, Georgia 30338

This Agreement shall not become enforceable until the seven (7) day revocation period has expired without Bloodworth revoking her signature.

9. **Non-disparagement.** Bloodworth and Clarkson, in her individual capacity and in her official capacity as it relates to the Company, agrees not to make any oral or written statements or

reveal any information to any person, about the other Party which disparages or damages the other Party's reputation or business. The Company agrees that if asked for a reference by any prospective employer and/or current employer of Bloodworth, the Company will respond by only providing the dates Bloodworth was employed with the Company, last position held and rate of compensation.

**10.    Limited Confidentiality.**  Except for the claims related to the FLSA, Bloodworth agrees and promises that unless required by law to do so, she will not disclose the terms of this Agreement or information about her involvement with Company, or make any oral or written statements or reveal any information to any person, company, agency or other entity. Notwithstanding the foregoing, nothing in this Section shall restrict Bloodworth from discussing the job duties and responsibilities of her employment with the Company with a potential employer. Each Party agrees that it will not discuss the terms of this Agreement with others and if asked will say only that "the matter has been resolved satisfactorily."

**11.    Representations, Warranties and Affirmations.**  Bloodworth represents, warrants and affirms that she has no suits, claims, charges, complaints or demands of any kind whatsoever currently pending against Company with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board. Bloodworth represents, affirms and warrants that she has not filed any charge, complaint or action against Company with OSHA, the EEOC, the NLRB or any other Federal, State or local agency or board. This representation, affirmation, and warranty is a material inducement for Company to enter into this Agreement. In addition to all other rights and remedies Company may have at law or in equity, if Bloodworth's representation, affirmation, and warranty is false, Bloodworth will return to Company all consideration paid pursuant to Section 1 and Section 3 of this Agreement. Bloodworth further represents and affirms as a material term of this Agreement that she has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due to her, except as provided for in this Agreement.

**12.    Disclaimer of Liability.**  Nothing in this Agreement shall constitute or be construed as an admission of liability or wrongdoing by either Party. Each Party expressly denies that it has done anything wrong or unlawful.

**13.    Remedies for Breach.**  Should any Party prevail in any action brought against the other to enforce the terms of this Agreement, or to recover damages for breach of this Agreement, or to collect the FLSA Settlement Amount or the General Release Settlement Amount to be paid by Company under this Agreement, the prevailing Party shall be entitled to recover from the other her or its reasonable attorneys' fees incurred in the action, along with costs and damages. In addition to all other rights and remedies Company may have at law or in equity, if Bloodworth files a civil action or regulatory claim against Company alleging any of the claims released herein, Bloodworth will return to Company all consideration paid pursuant to Section 3 of this Agreement. Each Party further understands and acknowledges that the Confidentiality (Section 10), Nondisparagement (Section 9) and the payment schedule of the FLSA Settlement Amount and General Release (Section 4) provisions are material terms of the Agreement and constitutes consideration of the Agreement. Each Party acknowledges and agrees that the nonbreaching Party

would be irreparably harmed if the breaching Party breaches either of these provisions and that the amount of damages that would result from such a violation may be difficult or impossible to ascertain.  Therefore, each Party agrees that, if a Party breaches either of the above-referenced provisions of this Agreement, the breaching Party shall be obligated to pay the nonbreaching Party One Thousand Dollars ($1,000.00) for each proven breach as determined by a Court as liquidated damages, and not as a penalty.  This remedy is in addition to any other remedies provided for in law or equity or provided for herein.

**14.    Integration.**  This written Agreement contains the entire agreement of the Parties regarding the settlement of Bloodworth's claims under the FLSA and general release of claims.  This Agreement may not be changed orally but only by an agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.  The Parties acknowledge that each Party has not relied upon any representations or promises except as set forth herein and has not relied upon the other Party or its counsel for any advice on or interpretation of the legal or tax implications of this Agreement.  By signing below, the Parties acknowledge receipt of a copy of this Agreement.  Each Party has been advised to seek the advice of a Certified Public Accountant or other tax advisor to insure and review the Agreement and to advise each Party concerning how all of the terms and conditions set forth therein may affect their future tax liabilities.  The Parties hereto hereby acknowledge and agree that each has had the opportunity to retain its, his or her own Certified Public Accountants, tax advisor or tax attorney with reference to the tax implications of this Agreement.  Further, the Parties hereby acknowledge that they have not relied upon the tax implications of this Agreement.  Further, the Parties acknowledge and agree that their signatures to this Agreement serve as the acknowledgment that they have read this particular paragraph and that they have had the opportunity to seek independent advice.  All Parties acknowledge that its, his or her attorney provided them no tax advice and they have not relied on any representations of their lawyer in providing tax advice.

**15.    Severability.**  Should any clause of this Agreement be found void by a court of law, with the exception of the releases contained in Section 2 and Section 7 and the requirement that the Company pay Bloodworth and her counsel the FLSA Settlement Amount set forth in Section 1 and the General Release Settlement Amount set forth in Section 3, that fact shall not impair the remainder of this Agreement.

**16.    Governing Law.**  This Agreement shall be interpreted and enforced in accordance with the laws of the State of Georgia.  The parties agree to and hereby do submit to jurisdiction before any state or federal court of record in Cobb County, Georgia, subject to the right, if any, of either party to attempt to remove any claim arising under this Agreement to a United States District Court if said Court has jurisdiction.

**17.    Construction of Agreement.**  The Parties hereby confirm and agree that this Agreement is the result of negotiation and compromise and that in interpreting this Agreement neither party shall be considered to be the drafter of the document, and that the language should not be strictly construed against either party.  Instead, the language of the Agreement should be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

**18.    Binding Effect.**  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, officers, directors, shareholders,

employees, agents, parent companies, subsidiaries, divisions, affiliates, related companies, successors, and assigns.

**19.     Expenses.** The Parties shall pay their own expenses, including, without limitation, any attorney fees, mediation fees, court costs, pleading preparation, legal and expert fees, or other expenses incurred for the negotiation, preparation, and execution of this Agreement, with the exception of the payment of the FLSA Settlement Amount and the General Release Settlement Amount by the Company to Bloodworth and her counsel referenced in Section 1 and Section 3.

**20.     Counterparts.** This Agreement may be executed in identical counterparts, each of which shall constitute an original of this Agreement. Signatures of the Parties may be exchanged by facsimile or electronically (e.g. Pdf) and same shall be treated as an original.

**21.     Understanding and Voluntariness.** EACH PARTY REPRESENTS AND AGREES THAT THE PARTY HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH THE PARTY'S COUNSEL, THE PARTY HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND THAT THE PARTY IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

**(SIGNATURE PAGE TO FOLLOW)**

**IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be executed by their duly authorized representatives, and have executed and delivered this Agreement, as an agreement under seal, effective as of the Effective Date.

Fannie K. Bloodworth

Signature

Dated: _9-27-17_

Open Hearts Personal Care Homes, LLC,

Signature

By: _Dianna A. Clarkson_

Title: _Managing Principal_

Dated: _9-28-17_

Dianna A. Clarkson

Signature

Dated: _9-28-17_

Page 8 of 8

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

Kina Slaughter (hereinafter, "Slaughter") and Open Hearts Personal Care Homes, LLC, and Dianna A. Clarkson ("Company") (Slaughter and Company may be collectively referred to herein as the "Parties" or individually as a "Party") hereby agree upon a settlement of all issues involved herein, and as described in this Settlement Agreement and General Release ("Agreement"), this 24th day of September, 2017 ("Effective Date"), as follows:

### RECITALS

**WHEREAS**, Slaughter filed that certain civil action in the United States District Court for the Northern District of Georgia civil action number 1:17-cv-01373-LMM ("Complaint"), in which she asserted claims under the Fair Labor Standards Act ("FLSA");

**WHEREAS**, the Company denies the allegations asserted by Slaughter as set forth in the Complaint. The Company believes that Slaughter was properly compensated and, therefore, that Slaughter is not entitled to overtime pay. The Company believes that it acted in good faith and, therefore, that Slaughter is not entitled to liquidated damages. The Company further believes that it complied with the FLSA;

**WHEREAS**, by this Agreement, the Parties desire to settle, fully and finally, the claims that could arise under the FLSA; and

**WHEREAS**, the Parties have also separately negotiated and reached an agreement on a general release of claims and limited confidentiality specifically related thereto.

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual terms, covenants, and conditions hereinafter set forth, the Parties agree as follows:

1.     **Settlement Amount for FLSA Claim**. As consideration for Slaughter's release of her FLSA Claims, the Company will pay Slaughter and her attorneys the gross sum of $4,750 (the "FLSA Settlement Amount"). The FLSA Settlement Amount is being paid in settlement for Slaughter's FLSA Claims, and her attorney's fees and costs.

The Parties agree that the FLSA Settlement Amount will be paid as follows:

a.     The Company will pay Slaughter the gross amount of $4,500 as full compensation for Slaughter's liquidated damages claim. No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Slaughter.

b.     The Company will pay the Vaughn Law Firm, LLC the gross amount of $3,250 for attorney's fees. No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to the Vaughn Law Firm, LLC.

The consideration set forth above is in full and complete settlement of Slaughter's claims under the FLSA as alleged in the Complaint. Section 1(a) FLSA Settlement Amount and Section

1(b) of FLSA Settlement Amount shall be due and payable to the Vaughn Law Firm, LLC attorney trust account. Slaughter and her counsel agree not to seek any additional attorneys' fees, costs or expenses from the Company in connection with the matters alleged in the Complaint or which could have been alleged in a complaint.

**2.    Release of Claims under the FLSA by Slaughter.** In consideration of the FLSA Settlement Amount described in Section 1 of this Agreement, Slaughter releases and discharges the Company from any liability for claims and damages allegedly arising under the FLSA, including the Overtime Claim and the Liquidated Damages Claim.

**3.    Settlement Amount for General Release and Limited Confidentiality.** As consideration for Slaughter's general release of claims against the Company in Section 7 of this Agreement and for the limited Confidentiality of this Agreement in Section 10, the Company will pay Slaughter the gross sum of $500 (the "General Release Settlement Amount"). No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Slaughter.

The consideration set forth above is in full and complete settlement of Slaughter's general release of claims against the Company and limited confidentiality terms. The General Release Settlement Amount shall be due and payable to the Vaughn Law Firm, LLC in accordance with Section 4 of this Agreement.

**4.    Payment Schedule.** The FLSA Settlement Amount and the General Release Settlement Amount will be paid upon the later of seven (7) days of the Court's approval of the Joint Motion for the Approval of the Settlement Agreement or the expiration of the revocation period as set forth in Section 8(d).

**5.    Court Approval.** The Parties shall execute and submit to the U.S. District Court for the Northern District of Georgia (the "Court") a joint motion for an Order approving this Agreement and entering a stipulation of judgment dismissing this case, with prejudice, as well as any other appropriate form(s) required by the Court to cause the dismissal of the Complaint with prejudice and closure of all matters referenced in the Complaint. The Joint Motion for Approval of Settlement and Stipulation of Judgment Dismissing Case, shall be filed within seven (7) days of the Effective Date of this Agreement.

**6.    Tax Liability.** In paying the amount specified in Section 1 or Section 3, Company makes no representation regarding the tax consequences or liability arising from said payments. Slaughter understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is her sole responsibility, and that she will pay any such taxes that may be due or become due. Slaughter agrees to bear all tax consequences, if any, attendant upon the payment to her of the FLSA Settlement Amount and the General Release Settlement Amount. Slaughter further agrees to hold Company harmless from and against all valid tax or tax withholding claims, amounts, interest, penalties, fines or assessments finally determined to be valid by any taxing authority or governmental agency with regard to the FLSA Settlement Amount and the General Release Settlement Amount. In the event Company receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest

arising out of this settlement are being or will be made against Company, Company shall promptly, after receipt of such written notice, notify Slaughter by letter sent to counsel for Slaughter.

   7.     **General Release by Slaughter.**   In consideration of the General Release Settlement Amount described in Section 3 of this Agreement, Slaughter (for herself, her agents, assigns, heirs, executors, and administrators) releases and discharges the Company (including its officers, owners, principals, members, employees, agents, representatives, attorneys, or officers) from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature whatsoever, known or unknown, in law or equity which arose at any time from the beginning of time to the date Slaughter executes this Agreement.  Without limiting the foregoing general release, Slaughter understands that this general release applies, but is not limited, to: all claims arising out of Slaughter's employment relationship with the Company, the cessation of that employment, the compensation or benefits payable in connection with that employment or the cessation of that employment and/or any other interaction with Company, including, without limitation, (a) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq*.; (b) The Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101*et seq*.; (c) The Equal Pay Act, as amended, 29 U.S.C. § 206, *et seq*.; (d) The Lilly Ledbetter Fair Pay Act of 2009; (e) The Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq*.; (f) The National Labor Relations Act, 29 U.S.C. § 151, *et seq*.; (g) The Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 *et seq*.; (h) The Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et seq*.; (i) The Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq*.; (j) The Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq*. (the "FLSA"); (k) The Occupational Safety and Health Act, as amended, 29 U.S.C. § 651, *et seq*. (l) The Age Discrimination in Employment Act, 29 U.S.C §621, *et seq*. ("ADEA"), (m) the Older Workers Benefit Protection Act of 1990, 29 U.S.C. 626(1), *et seq*. ("OWBPA"), (n) any agreement, representation, promise, understanding, policy, practice, plan, or potential entitlement (regardless of the source); (o) past or future wages, severance, compensation, vacation pay, holiday pay, meal or rest breaks, overtime, benefits, bonuses, commissions, fringe benefits, reimbursement of expenses, or other forms of consideration, payment, or remuneration, except for claims to enforce payment of those sums explicitly identified in Section 1 or Section 3; (p) breach of contract; (q) intentional and/or negligent infliction of emotional distress; and (r) any other federal, state, or local law, whether arising or emanating from statute, executive order, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing.

   Slaughter further waives any and all rights to participate in a class or collective action alleging violations of any of the above laws, including those brought under the FLSA, and Slaughter further covenants and agrees not to accept, recover or receive any back pay, front pay, liquidated damages, other damages or any form of relief based upon any claims that have been asserted or could have been asserted or settled in a lawsuit that may arise out of, or in connection with, any other individual, class or administrative remedies pursued by any state or local governmental agency against Company.

   IT IS THE INTENT OF SLAUGHTER TO RELEASE ALL CLAIMS OF EVERY NATURE AND KIND WHETHER KNOWN OR UNKNOWN, ACCRUED OR NOT

ACCRUED, WHICH SLAUGHTER HAD OR MAY HAVE AGAINST THE COMPANY AS OF THE DATE OF THE EXECUTION OF THIS AGREEMENT.

This Agreement shall not apply to any provision of this Agreement that may be interpreted to waive, release, or extinguish any rights that, by express and unequivocal terms of law, may not under any circumstances be waived, released, or extinguished, including any other claim which cannot be released by private agreement.

**8.      OWBPA/ADEA Waiver.**   By signing this Agreement, Slaughter specifically releases and waives any right or claim against the Defendants arising out of her employment or termination of employment by Defendants under the ADEA or OWBPA.  Further, by signing this Agreement, Slaughter  acknowledges that:

a.      this Agreement is written in a manner that she understands;

b.      she has been advised to consult and has consulted an attorney before signing this Agreement;

c.      she has been given twenty-one (21) days from receipt of this Agreement to consider whether she wishes to sign it.  If she signs the document during this twenty-one (21) day period, the signature will be deemed to be knowing and voluntary and not induced by fraud, misrepresentation, or a threat to withdraw the offer during the twenty-one (21) day period; and

d.      she shall have seven (7) days after the Effective Date of this Agreement to revoke this Agreement.  If she revokes, the Agreement shall not be enforceable and she shall not be entitled to the consideration stated above.   To be effective, the revocation must be in writing and received within the seven (7) day period by:

> Lisa Y. Bowman, *Esq.*
> 1050 Crown Pointe Pkwy
> Suite 500
> Atlanta, Georgia 30338

This Agreement shall not become enforceable until the seven (7) day revocation period has expired without Slaughter revoking her signature.

**9.   Non-disparagement.** Slaughter and Clarkson, in her individual capacity and in her official capacity as it relates to the Company, agrees not to make any oral or written statements or reveal any information to any person, about the other Party which disparages or damages the other Party's reputation or business. The Company agrees that if asked for a reference by any prospective employer and/or current employer of Slaughter, the Company will respond by only providing the dates Slaughter was employed with the Company, last position held and rate of compensation.

**10.      Limited Confidentiality.**   Except for the claims related to the FLSA, Slaughter agrees and promises that unless required by law to do so, she will not disclose the terms of this

Agreement or information about her involvement with Company, or make any oral or written statements or reveal any information to any person, company, agency or other entity. Notwithstanding the foregoing, nothing in this Section shall restrict Slaughter from discussing the job duties and responsibilities of her employment with the Company with a potential employer. Each Party agrees that it will not discuss the terms of this Agreement with others and if asked will say only that "the matter has been resolved satisfactorily."

**11.    Representations, Warranties and Affirmations.**  Slaughter represents, warrants and affirms that she has no suits, claims, charges, complaints or demands of any kind whatsoever currently pending against Company with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board.  Slaughter represents, affirms and warrants that she has not filed any charge, complaint or action against Company with OSHA, the EEOC, the NLRB or any other Federal, State or local agency or board.  This representation, affirmation, and warranty is a material inducement for Company to enter into this Agreement.  In addition to all other rights and remedies Company may have at law or in equity, if Slaughter's representation, affirmation, and warranty is false, Slaughter will return to Company all consideration paid pursuant to Section 1 and Section 3 of this Agreement.  Slaughter further represents and affirms as a material term of this Agreement that she has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due to her, except as provided for in this Agreement.

**12.    Disclaimer of Liability.**    Nothing in this Agreement shall constitute or be construed as an admission of liability or wrongdoing by either Party.  Each Party expressly denies that it has done anything wrong or unlawful.

**13.    Remedies for Breach.**  Should any Party prevail in any action brought against the other to enforce the terms of this Agreement, or to recover damages for breach of this Agreement, or to collect the FLSA Settlement Amount or the General Release Settlement Amount to be paid by Company under this Agreement, the prevailing Party shall be entitled to recover from the other her or its reasonable attorneys' fees incurred in the action, along with costs and damages.  In addition to all other rights and remedies Company may have at law or in equity, if Slaughter files a civil action or regulatory claim against Company alleging any of the claims released herein, Slaughter will return to Company all consideration paid pursuant to Section 3 of this Agreement. Each Party further understands and acknowledges that the Confidentiality (Section 10), Nondisparagement (Section 9) and the payment schedule of the FLSA Settlement Amount and General Release (Section 4) provisions are material terms of the Agreement and constitutes consideration of the Agreement.  Each Party acknowledges and agrees that the nonbreaching Party would be irreparably harmed if the breaching Party breaches either of these provisions and that the amount of damages that would result from such a violation may be difficult or impossible to ascertain.  Therefore, each Party agrees that, if a Party breaches either of the above-referenced provisions of this Agreement, the breaching Party shall be obligated to pay the nonbreaching Party One Thousand Dollars ($1,000.00) for each proven breach as determined by a Court as liquidated damages, and not as a penalty.  This remedy is in addition to any other remedies provided for in law or equity or provided for herein.

**14.    Integration**.  This written Agreement contains the entire agreement of the Parties regarding the settlement of Slaughter's claims under the FLSA and general release of claims.  This Agreement may not be changed orally but only by an agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. The Parties acknowledge that each Party has not relied upon any representations or promises except as set forth herein and has not relied upon the other Party or its counsel for any advice on or interpretation of the legal or tax implications of this Agreement.  By signing below, the Parties acknowledge receipt of a copy of this Agreement.  Each Party has been advised to seek the advice of a Certified Public Accountant or other tax advisor to insure and review the Agreement and to advise each Party concerning how all of the terms and conditions set forth therein may affect their future tax liabilities.  The Parties hereto hereby acknowledge and agree that each has had the opportunity to retain its, his or her own Certified Public Accountants, tax advisor or tax attorney with reference to the tax implications of this Agreement.  Further, the Parties hereby acknowledge that they have not relied upon the tax implications of this Agreement.  Further, the Parties acknowledge and agree that their signatures to this Agreement serve as the acknowledgment that they have read this particular paragraph and that they have had the opportunity to seek independent advice.  All Parties acknowledge that its, his or her attorney provided them no tax advice and they have not relied on any representations of their lawyer in providing tax advice.

**15.    Severability.**  Should any clause of this Agreement be found void by a court of law, with the exception of the releases contained in Section 2 and Section 7 and the requirement that the Company pay Slaughter and her counsel the FLSA Settlement Amount set forth in Section 1 and the General Release Settlement Amount set forth in Section 3, that fact shall not impair the remainder of this Agreement.

**16.    Governing Law.**  This Agreement shall be interpreted and enforced in accordance with the laws of the State of Georgia.  The parties agree to and hereby do submit to jurisdiction before any state or federal court of record in Cobb County, Georgia, subject to the right, if any, of either party to attempt to remove any claim arising under this Agreement to a United States District Court if said Court has jurisdiction.

**17.    Construction of Agreement.**  The Parties hereby confirm and agree that this Agreement is the result of negotiation and compromise and that in interpreting this Agreement neither party shall be considered to be the drafter of the document, and that the language should not be strictly construed against either party.  Instead, the language of the Agreement should be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

**18.    Binding Effect.**  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, officers, directors, shareholders, employees, agents, parent companies, subsidiaries, divisions, affiliates, related companies, successors, and assigns.

**19.    Expenses.**  The Parties shall pay their own expenses, including, without limitation, any attorney fees, mediation fees, court costs, pleading preparation, legal and expert fees, or other expenses incurred for the negotiation, preparation, and execution of this Agreement, with the exception of the payment of the FLSA Settlement Amount and the General Release Settlement Amount by the Company to Slaughter and her counsel referenced in Section 1 and Section 3.

20.     **Counterparts.**  This Agreement may be executed in identical counterparts, each of which shall constitute an original of this Agreement. Signatures of the Parties may be exchanged by facsimile or electronically (e.g. Pdf) and same shall be treated as an original.

21.     **Understanding and Voluntariness.** EACH PARTY REPRESENTS AND AGREES THAT THE PARTY HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH THE PARTY'S COUNSEL, THE PARTY HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND THAT THE PARTY IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

**(SIGNATURE PAGE TO FOLLOW)**

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives, and have executed and delivered this Agreement, as an agreement under seal, effective as of the Effective Date.

**Kina Slaughter**

_____
Signature

Dated: _9/25/17_____

**Open Hearts Personal Care Homes, LLC,**

_____
Signature

By: _Dianna A Clarkson_

Title: _Managing Principal_

Dated: _9-28-17_____

**Dianna A. Clarkson**

_____
Signature

Dated: _9-28-17_____

# SETTLEMENT AGREEMENT AND GENERAL RELEASE

Tedra Pryor (hereinafter, "Pryor") and Open Hearts Personal Care Homes, LLC, and Dianna A. Clarkson ("Company") (Pryor and Company may be collectively referred to herein as the "Parties" or individually as a "Party") hereby agree upon a settlement of all issues involved herein, and as described in this Settlement Agreement and General Release ("Agreement"), this 24th day of September, 2017 ("Effective Date"), as follows:

## RECITALS

**WHEREAS**, Pryor filed that certain civil action in the United States District Court for the Northern District of Georgia civil action number 1:17-cv-01373-LMM ("Complaint"), in which she asserted claims under the Fair Labor Standards Act ("FLSA");

**WHEREAS**, the Company denies the allegations asserted by Pryor as set forth in the Complaint. The Company believes that Pryor was properly compensated and, therefore, that Pryor is not entitled to overtime pay. The Company believes that it acted in good faith and, therefore, that Pryor is not entitled to liquidated damages. The Company further believes that it complied with the FLSA;

**WHEREAS**, by this Agreement, the Parties desire to settle, fully and finally, the claims that could arise under the FLSA; and

**WHEREAS**, the Parties have also separately negotiated and reached an agreement on a general release of claims and limited confidentiality specifically related thereto.

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual terms, covenants, and conditions hereinafter set forth, the Parties agree as follows:

1.     **Settlement Amount for FLSA Claim**.  As consideration for Pryor's release of her FLSA Claims, the Company will pay Pryor and her attorneys the gross sum of $4,750 (the "FLSA Settlement Amount"). The FLSA Settlement Amount is being paid in settlement for Pryor's FLSA Claims, and her attorney's fees and costs.

The Parties agree that the FLSA Settlement Amount will be paid as follows:

a.     The Company will pay Pryor the gross amount of $4,500 as full compensation for Pryor's liquidated damages claim.  No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Pryor.

b.     The Company will pay the Vaughn Law Firm, LLC the gross amount of $3,250 for attorney's fees.  No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to the Vaughn Law Firm, LLC.

The consideration set forth above is in full and complete settlement of Pryor's claims under the FLSA as alleged in the Complaint.  Section 1(a) FLSA Settlement Amount and Section 1(b)

of FLSA Settlement Amount shall be due and payable to the Vaughn Law Firm, LLC attorney trust account. Pryor and her counsel agree not to seek any additional attorneys' fees, costs or expenses from the Company in connection with the matters alleged in the Complaint or which could have been alleged in a complaint.

**2.**     **Release of Claims under the FLSA by Pryor.**  In consideration of the FLSA Settlement Amount described in Section 1 of this Agreement, Pryor releases and discharges the Company from any liability for claims and damages allegedly arising under the FLSA, including the Overtime Claim and the Liquidated Damages Claim.

**3.**     **Settlement Amount for General Release and Limited Confidentiality.**  As consideration for Pryor's general release of claims against the Company in Section 7 of this Agreement and for the limited Confidentiality of this Agreement in Section 10, the Company will pay Pryor the gross sum of $500 (the "General Release Settlement Amount"). No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Pryor.

The consideration set forth above is in full and complete settlement of Pryor's general release of claims against the Company and limited confidentiality terms. The General Release Settlement Amount shall be due and payable to the Vaughn Law Firm, LLC in accordance with Section 4 of this Agreement.

**4.**     **Payment Schedule.**  The FLSA Settlement Amount and the General Release Settlement Amount will be paid upon the later of seven (7) days of the Court's approval of the Joint Motion for the Approval of the Settlement Agreement or the expiration of the revocation period as set forth in Section 8(d).

**5.**     **Court Approval.**  The Parties shall execute and submit to the U.S. District Court for the Northern District of Georgia (the "Court") a joint motion for an Order approving this Agreement and entering a stipulation of judgment dismissing this case, with prejudice, as well as any other appropriate form(s) required by the Court to cause the dismissal of the Complaint with prejudice and closure of all matters referenced in the Complaint. The Joint Motion for Approval of Settlement and Stipulation of Judgment Dismissing Case, shall be filed within seven (7) days of the Effective Date of this Agreement.

**6.**     **Tax Liability.**  In paying the amount specified in Section 1 or Section 3, Company makes no representation regarding the tax consequences or liability arising from said payments. Pryor understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is her sole responsibility, and that she will pay any such taxes that may be due or become due. Pryor agrees to bear all tax consequences, if any, attendant upon the payment to her of the FLSA Settlement Amount and the General Release Settlement Amount. Pryor further agrees to hold Company harmless from and against all valid tax or tax withholding claims, amounts, interest, penalties, fines or assessments finally determined to be valid by any taxing authority or governmental agency with regard to the FLSA Settlement Amount and the General Release Settlement Amount. In the event Company receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against Company, Company shall promptly, after receipt of such written notice, notify Pryor by letter sent to counsel for Pryor.

7.     **General Release by Pryor.**  In consideration of the General Release Settlement Amount described in Section 3 of this Agreement, Pryor (for herself, her agents, assigns, heirs, executors, and administrators) releases and discharges the Company (including its officers, owners, principals, members, employees, agents, representatives, attorneys, or officers) from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature whatsoever, known or unknown, in law or equity which arose at any time from the beginning of time to the date Pryor executes this Agreement.  Without limiting the foregoing general release, Pryor understands that this general release applies, but is not limited, to: all claims arising out of Pryor's employment relationship with the Company, the cessation of that employment, the compensation or benefits payable in connection with that employment or the cessation of that employment and/or any other interaction with Company, including, without limitation, (a) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*; (b) The Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101*et seq.*; (c) The Equal Pay Act, as amended, 29 U.S.C. § 206, *et seq.*; (d) The Lilly Ledbetter Fair Pay Act of 2009; (e) The Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq.*; (f) The National Labor Relations Act, 29 U.S.C. § 151, *et seq.*; (g) The Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 *et seq.*; (h) The Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et seq.*; (i) The Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*; (j) The Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq.* (the "FLSA"); (k) The Occupational Safety and Health Act, as amended, 29 U.S.C. § 651, *et seq.* (l) The Age Discrimination in Employment Act, 29 U.S.C §621, *et seq.* ("ADEA"), (m) the Older Workers Benefit  Protection  Act of 1990, 29 U.S.C. 626(1), *et seq.* ("OWBPA"), (n) any agreement, representation, promise, understanding, policy, practice, plan, or potential entitlement (regardless of the source); (o) past or future wages, severance, compensation, vacation pay, holiday pay, meal or rest breaks, overtime, benefits, bonuses, commissions, fringe benefits, reimbursement of expenses, or other forms of consideration, payment, or remuneration, except for claims to enforce payment of those sums explicitly identified in Section 1 or Section 3; (p) breach of contract; (q) intentional and/or negligent infliction of emotional distress; and (r) any other federal, state, or local law, whether arising or emanating from statute, executive order, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing.

Pryor further waives any and all rights to participate in a class or collective action alleging violations of any of the above laws, including those brought under the FLSA, and Pryor further covenants and agrees not to accept, recover or receive any back pay, front pay, liquidated damages, other damages or any form of relief based upon any claims that have been asserted or could have been asserted or settled in a lawsuit that may arise out of, or in connection with, any other individual, class or administrative remedies pursued by any state or local governmental agency against Company.

IT IS THE INTENT OF PRYOR TO RELEASE ALL CLAIMS OF EVERY NATURE AND KIND WHETHER KNOWN OR UNKNOWN, ACCRUED OR NOT ACCRUED, WHICH PRYOR HAD OR MAY HAVE AGAINST THE COMPANY AS OF THE DATE OF THE EXECUTION OF THIS AGREEMENT.

This Agreement shall not apply to any provision of this Agreement that may be interpreted to waive, release, or extinguish any rights that, by express and unequivocal terms of law, may not under any circumstances be waived, released, or extinguished, including any other claim which cannot be released by private agreement.

**8.    OWBPA/ADEA Waiver.**  By signing this Agreement, Pryor specifically releases and waives any right or claim against the Defendants arising out of her employment or termination of employment by Defendants under the ADEA or OWBPA.  Further, by signing this Agreement, Pryor  acknowledges that:

a.    this Agreement is written in a manner that she understands;

b.    she has been advised to consult and has consulted an attorney before signing this Agreement;

c.    she has been given twenty-one (21) days from receipt of this Agreement to consider whether she wishes to sign it.  If she signs the document during this twenty-one (21) day period, the signature will be deemed to be knowing and voluntary and not induced by fraud, misrepresentation, or a threat to withdraw the offer during the twenty-one (21) day period; and

d.    she shall have seven (7) days after the Effective Date of this Agreement to revoke this Agreement.  If she revokes, the Agreement shall not be enforceable and she shall not be entitled to the consideration stated above.   To be effective, the revocation must be in writing and received within the seven (7) day period by:

> Lisa Y. Bowman, *Esq*.
> 1050 Crown Pointe Pkwy
> Suite 500
> Atlanta, Georgia 30338

This Agreement shall not become enforceable until the seven (7) day revocation period has expired without Pryor revoking her signature.

**9. Non-disparagement.** Pryor and Clarkson, in her individual capacity and in her official capacity as it relates to the Company, agrees not to make any oral or written statements or reveal any information to any person, about the other Party which disparages or damages the other Party's reputation or business. The Company agrees that if asked for a reference by any prospective employer and/or current employer of Pryor, the Company will respond by only providing the dates Pryor was employed with the Company, last position held and rate of compensation.

**10.    Limited Confidentiality.**  Except for the claims related to the FLSA, Pryor agrees and promises that unless required by law to do so, she will not disclose the terms of this Agreement or information about her involvement with Company, or make any oral or written statements or reveal any information to any person, company, agency or other entity.   Notwithstanding the foregoing, nothing in this Section shall restrict Pryor from discussing the job duties and

responsibilities of her employment with the Company with a potential employer. Each Party agrees that it will not discuss the terms of this Agreement with others and if asked will say only that "the matter has been resolved satisfactorily."

**11.   Representations, Warranties and Affirmations.**  Pryor represents, warrants and affirms that she has no suits, claims, charges, complaints or demands of any kind whatsoever currently pending against Company with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board.  Pryor represents, affirms and warrants that she has not filed any charge, complaint or action against Company with OSHA, the EEOC, the NLRB or any other Federal, State or local agency or board.  This representation, affirmation, and warranty is a material inducement for Company to enter into this Agreement.  In addition to all other rights and remedies Company may have at law or in equity, if Pryor's representation, affirmation, and warranty is false, Pryor will return to Company all consideration paid pursuant to Section 1 and Section 3 of this Agreement.  Pryor further represents and affirms as a material term of this Agreement that she has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due to her, except as provided for in this Agreement.

**12.   Disclaimer of Liability.**   Nothing in this Agreement shall constitute or be construed as an admission of liability or wrongdoing by either Party.  Each Party expressly denies that it has done anything wrong or unlawful.

**13.   Remedies for Breach.**  Should any Party prevail in any action brought against the other to enforce the terms of this Agreement, or to recover damages for breach of this Agreement, or to collect the FLSA Settlement Amount or the General Release Settlement Amount to be paid by Company under this Agreement, the prevailing Party shall be entitled to recover from the other her or its reasonable attorneys' fees incurred in the action, along with costs and damages.  In addition to all other rights and remedies Company may have at law or in equity, if Pryor files a civil action or regulatory claim against Company alleging any of the claims released herein, Pryor will return to Company all consideration paid pursuant to Section 3 of this Agreement.  Each Party further understands and acknowledges that the Confidentiality (Section 10), Nondisparagement (Section 9) and the payment schedule of the FLSA Settlement Amount and General Release (Section 4) provisions are material terms of the Agreement and constitutes consideration of the Agreement.   Each Party acknowledges and agrees that the nonbreaching Party would be irreparably harmed if the breaching Party breaches either of these provisions and that the amount of damages that would result from such a violation may be difficult or impossible to ascertain.  Therefore, each Party agrees that, if a Party breaches either of the above-referenced provisions of this Agreement, the breaching Party shall be obligated to pay the nonbreaching Party One Thousand Dollars ($1,000.00) for each proven breach as determined by a Court as liquidated damages, and not as a penalty.  This remedy is in addition to any other remedies provided for in law or equity or provided for herein.

**14.   Integration**.  This written Agreement contains the entire agreement of the Parties regarding the settlement of Pryor's claims under the FLSA and general release of claims.  This Agreement may not be changed orally but only by an agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.

The Parties acknowledge that each Party has not relied upon any representations or promises except as set forth herein and has not relied upon the other Party or its counsel for any advice on or interpretation of the legal or tax implications of this Agreement. By signing below, the Parties acknowledge receipt of a copy of this Agreement. Each Party has been advised to seek the advice of a Certified Public Accountant or other tax advisor to insure and review the Agreement and to advise each Party concerning how all of the terms and conditions set forth therein may affect their future tax liabilities. The Parties hereto hereby acknowledge and agree that each has had the opportunity to retain its, his or her own Certified Public Accountants, tax advisor or tax attorney with reference to the tax implications of this Agreement. Further, the Parties hereby acknowledge that they have not relied upon the tax implications of this Agreement. Further, the Parties acknowledge and agree that their signatures to this Agreement serve as the acknowledgment that they have read this particular paragraph and that they have had the opportunity to seek independent advice. All Parties acknowledge that its, his or her attorney provided them no tax advice and they have not relied on any representations of their lawyer in providing tax advice.

15.     **Severability.** Should any clause of this Agreement be found void by a court of law, with the exception of the releases contained in Section 2 and Section 7 and the requirement that the Company pay Pryor and her counsel the FLSA Settlement Amount set forth in Section 1 and the General Release Settlement Amount set forth in Section 3, that fact shall not impair the remainder of this Agreement.

16.     **Governing Law.** This Agreement shall be interpreted and enforced in accordance with the laws of the State of Georgia. The parties agree to and hereby do submit to jurisdiction before any state or federal court of record in Cobb County, Georgia, subject to the right, if any, of either party to attempt to remove any claim arising under this Agreement to a United States District Court if said Court has jurisdiction.

17.     **Construction of Agreement.** The Parties hereby confirm and agree that this Agreement is the result of negotiation and compromise and that in interpreting this Agreement neither party shall be considered to be the drafter of the document, and that the language should not be strictly construed against either party. Instead, the language of the Agreement should be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

18.     **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, officers, directors, shareholders, employees, agents, parent companies, subsidiaries, divisions, affiliates, related companies, successors, and assigns.

19.     **Expenses.** The Parties shall pay their own expenses, including, without limitation, any attorney fees, mediation fees, court costs, pleading preparation, legal and expert fees, or other expenses incurred for the negotiation, preparation, and execution of this Agreement, with the exception of the payment of the FLSA Settlement Amount and the General Release Settlement Amount by the Company to Pryor and her counsel referenced in Section 1 and Section 3.

20.     **Counterparts.** This Agreement may be executed in identical counterparts, each of which shall constitute an original of this Agreement. Signatures of the Parties may be exchanged by facsimile or electronically (e.g. Pdf) and same shall be treated as an original.

      **21.**    **Understanding and Voluntariness.** EACH PARTY REPRESENTS AND AGREES THAT THE PARTY HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH THE PARTY'S COUNSEL, THE PARTY HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND THAT THE PARTY IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

**(SIGNATURE PAGE TO FOLLOW)**

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives, and have executed and delivered this Agreement, as an agreement under seal, effective as of the Effective Date.

**Tedra Pryor**

_____
Signature

Dated: _9-25-17_____

**Open Hearts Personal Care Homes, LLC,**

_____
Signature

_Dianna  A. Clarkson_
By:

_Managing Principal_
Title:

Dated: _9·28-17_____

**Dianna A. Clarkson**

_____
Signature

Dated: _9-28-17_____

Page 8 of 8

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

Julius Watson (hereinafter, "Watson") and Open Hearts Personal Care Homes, LLC, and Dianna A. Clarkson ("Company") (Watson and Company may be collectively referred to herein as the "Parties" or individually as a "Party") hereby agree upon a settlement of all issues involved herein, and as described in this Settlement Agreement and General Release ("Agreement"), this 24th day of September, 2017 ("Effective Date"), as follows:

## RECITALS

**WHEREAS**, Watson filed that certain civil action in the United States District Court for the Northern District of Georgia civil action number 1:17-cv-01373-LMM ("Complaint"), in which he asserted claims under the Fair Labor Standards Act ("FLSA");

**WHEREAS**, the Company denies the allegations asserted by Watson as set forth in the Complaint. The Company believes that Watson was properly compensated and, therefore, that Watson is not entitled to overtime pay. The Company believes that it acted in good faith and, therefore, that Watson is not entitled to liquidated damages. The Company further believes that it complied with the FLSA;

**WHEREAS**, by this Agreement, the Parties desire to settle, fully and finally, the claims that could arise under the FLSA; and

**WHEREAS**, the Parties have also separately negotiated and reached an agreement on a general release of claims and limited confidentiality specifically related thereto.

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual terms, covenants, and conditions hereinafter set forth, the Parties agree as follows:

1. **Settlement Amount for FLSA Claim.** As consideration for Watson's release of his FLSA Claims, the Company will pay Watson and his attorneys the gross sum of $4,750 (the "FLSA Settlement Amount"). The FLSA Settlement Amount is being paid in settlement for Watson's FLSA Claims, and his attorney's fees and costs.

The Parties agree that the FLSA Settlement Amount will be paid as follows:

a. The Company will pay Watson the gross amount of $4,500 as full compensation for Watson's liquidated damages claim. No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Watson.

b. The Company will pay the Vaughn Law Firm, LLC the gross amount of $3,250 for attorney's fees. No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to the Vaughn Law Firm, LLC.

The consideration set forth above is in full and complete settlement of Watson's claims under the FLSA as alleged in the Complaint. Section 1(a) FLSA Settlement Amount and Section

1(b) of FLSA Settlement Amount shall be due and payable to the Vaughn Law Firm, LLC attorney trust account.  Watson and his counsel agree not to seek any additional attorneys' fees, costs or expenses from the Company in connection with the matters alleged in the Complaint or which could have been alleged in a complaint.

**2.    Release of Claims under the FLSA by Watson.**  In consideration of the FLSA Settlement Amount described in Section 1 of this Agreement, Watson releases and discharges the Company from any liability for claims and damages allegedly arising under the FLSA, including the Overtime Claim and the Liquidated Damages Claim.

**3.    Settlement Amount for General Release and Limited Confidentiality.**  As consideration for Watson's general release of claims against the Company in Section 7 of this Agreement and for the limited Confidentiality of this Agreement in Section 10, the Company will pay Watson the gross sum of $500 (the "General Release Settlement Amount").  No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Watson.

The consideration set forth above is in full and complete settlement of Watson's general release of claims against the Company and limited confidentiality terms.  The General Release Settlement Amount shall be due and payable to the Vaughn Law Firm, LLC in accordance with Section 4 of this Agreement.

**4.    Payment Schedule.**  The FLSA Settlement Amount and the General Release Settlement Amount will be paid upon the later of seven (7) days of the Court's approval of the Joint Motion for the Approval of the Settlement Agreement or the expiration of the revocation period as set forth in Section 8(d).

**5.    Court Approval.**  The Parties shall execute and submit to the U.S. District Court for the Northern District of Georgia (the "Court") a joint motion for an Order approving this Agreement and entering a stipulation of judgment dismissing this case, with prejudice, as well as any other appropriate form(s) required by the Court to cause the dismissal of the Complaint with prejudice and closure of all matters referenced in the Complaint. The Joint Motion for Approval of Settlement and Stipulation of Judgment Dismissing Case, shall be filed within seven (7) days of the Effective Date of this Agreement.

**6.    Tax Liability.**  In paying the amount specified in Section 1 or Section 3, Company makes no representation regarding the tax consequences or liability arising from said payments. Watson understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is his sole responsibility, and thathewill pay any such taxes that may be due or become due. Watson agrees to bear all tax consequences, if any, attendant upon the payment to his of the FLSA Settlement Amount and the General Release Settlement Amount. Watson further agrees to hold Company harmless from and against all valid tax or tax withholding claims, amounts, interest, penalties, fines or assessments finally determined to be valid by any taxing authority or governmental agency with regard to the FLSA Settlement Amount and the General Release Settlement Amount. In the event Company receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this

settlement are being or will be made against Company, Company shall promptly, after receipt of such written notice, notify Watson by letter sent to counsel for Watson.

       **7.**      **General Release by Watson.**  In consideration of the General Release Settlement Amount described in Section 3 of this Agreement, Watson (for himself, his agents, assigns, heirs, executors, and administrators) releases and discharges the Company (including its officers, owners, principals, members, employees, agents, representatives, attorneys, or officers) from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature whatsoever, known or unknown, in law or equity which arose at any time from the beginning of time to the date Watson executes this Agreement. Without limiting the foregoing general release, Watson understands that this general release applies, but is not limited, to: all claims arising out of Watson's employment relationship with the Company, the cessation of that employment, the compensation or benefits payable in connection with that employment or the cessation of that employment and/or any other interaction with Company, including, without limitation, (a) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq*.; (b) The Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101*et seq*.; (c) The Equal Pay Act, as amended, 29 U.S.C. § 206, *et seq*.; (d) The Lilly Ledbetter Fair Pay Act of 2009; (e) The Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq*.; (f) The National Labor Relations Act, 29 U.S.C. § 151, *et seq*.; (g) The Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 *et seq*.; (h) The Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et seq*.; (i) The Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq*.; (j) The Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq*. (the "FLSA"); (k) The Occupational Safety and Health Act, as amended, 29 U.S.C. § 651, *et seq*. (l) The Age Discrimination in Employment Act, 29 U.S.C §621, *et seq*. ("ADEA"), (m) the Older Workers Benefit  Protection  Act of 1990, 29 U.S.C. 626(1), *et seq*. ("OWBPA"), (n) any agreement, representation, promise, understanding, policy, practice, plan, or potential entitlement (regardless of the source); (o) past or future wages, severance, compensation, vacation pay, holiday pay, meal or rest breaks, overtime, benefits, bonuses, commissions, fringe benefits, reimbursement of expenses, or other forms of consideration, payment, or remuneration, except for claims to enforce payment of those sums explicitly identified in Section 1 or Section 3; (p) breach of contract; (q) intentional and/or negligent infliction of emotional distress; and (r) any other federal, state, or local law, whether arising or emanating from statute, executive order, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing.

       Watson further waives any and all rights to participate in a class or collective action alleging violations of any of the above laws, including those brought under the FLSA, and Watson further covenants and agrees not to accept, recover or receive any back pay, front pay, liquidated damages, other damages or any form of relief based upon any claims that have been asserted or could have been asserted or settled in a lawsuit that may arise out of, or in connection with, any other individual, class or administrative remedies pursued by any state or local governmental agency against Company.

      IT IS THE INTENT OF WATSON TO RELEASE ALL CLAIMS OF EVERY NATURE AND KIND WHETHER KNOWN OR UNKNOWN, ACCRUED OR NOT ACCRUED, WHICH

WATSON HAD OR MAY HAVE AGAINST THE COMPANY AS OF THE DATE OF THE EXECUTION OF THIS AGREEMENT.

This Agreement shall not apply to any provision of this Agreement that may be interpreted to waive, release, or extinguish any rights that, by express and unequivocal terms of law, may not under any circumstances be waived, released, or extinguished, including any other claim which cannot be released by private agreement.

**8.     OWBPA/ADEA Waiver.**   By signing this Agreement, Watson specifically releases and waives any right or claim against the Defendants arising out of his employment or termination of employment by Defendants under the ADEA or OWBPA.  Further, by signing this Agreement, Watson  acknowledges that:

a.     this Agreement is written in a manner that he understands;

b.     she has been advised to consult and has consulted an attorney before signing this Agreement;

c.     she has been given twenty-one (21) days from receipt of this Agreement to consider whether he wishes to sign it.  Ifhesigns the document during this twenty-one (21) day period, the signature will be deemed to be knowing and voluntary and not induced by fraud, misrepresentation, or a threat to withdraw the offer during the twenty-one (21) day period; and

d.     she shall have seven (7) days after the Effective Date of this Agreement to revoke this Agreement.  If he revokes, the Agreement shall not be enforceable and he shall not be entitled to the consideration stated above.  To be effective, the revocation must be in writing and received within the seven (7) day period by:

> Lisa Y. Bowman, *Esq*.
> 1050 Crown Pointe Pkwy
> Suite 500
> Atlanta, Georgia 30338

This Agreement shall not become enforceable until the seven (7) day revocation period has expired without Watson revoking his signature.

**9.   Non-disparagement.** Watson and Clarkson, in her individual capacity and in her official capacity as it relates to the Company, agrees not to make any oral or written statements or reveal any information to any person, about the other Party which disparages or damages the other Party's reputation or business. The Company agrees that if asked for a reference by any prospective employer and/or current employer of Watson, the Company will respond by only providing the dates Watson was employed with the Company, last position held and rate of compensation.

**10.     Limited Confidentiality.**   Except for the claims related to the FLSA, Watson agrees and promises that unless required by law to do so, he will not disclose the terms of this

Agreement or information about his involvement with Company, or make any oral or written statements or reveal any information to any person, company, agency or other entity. Notwithstanding the foregoing, nothing in this Section shall restrict Watson from discussing the job duties and responsibilities of his employment with the Company with a potential employer. Each Party agrees that it will not discuss the terms of this Agreement with others and if asked will say only that "the matter has been resolved satisfactorily."

**11.    Representations, Warranties and Affirmations.**  Watson represents, warrants and affirms that he has no suits, claims, charges, complaints or demands of any kind whatsoever currently pending against Company with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board.  Watson represents, affirms and warrants that he has not filed any charge, complaint or action against Company with OSHA, the EEOC, the NLRB or any other Federal, State or local agency or board.  This representation, affirmation, and warranty is a material inducement for Company to enter into this Agreement.  In addition to all other rights and remedies Company may have at law or in equity, if Watson's representation, affirmation, and warranty is false, Watson will return to Company all consideration paid pursuant to Section 1 and Section 3 of this Agreement.  Watson further represents and affirms as a material term of this Agreement that he has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which he may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due to her, except as provided for in this Agreement.

**12.    Disclaimer of Liability.**  Nothing in this Agreement shall constitute or be construed as an admission of liability or wrongdoing by either Party.  Each Party expressly denies that it has done anything wrong or unlawful.

**13.    Remedies for Breach.**  Should any Party prevail in any action brought against the other to enforce the terms of this Agreement, or to recover damages for breach of this Agreement, or to collect the FLSA Settlement Amount or the General Release Settlement Amount to be paid by Company under this Agreement, the prevailing Party shall be entitled to recover from the other his or its reasonable attorneys' fees incurred in the action, along with costs and damages.  In addition to all other rights and remedies Company may have at law or in equity, if Watson files a civil action or regulatory claim against Company alleging any of the claims released herein, Watson will return to Company all consideration paid pursuant to Section 3 of this Agreement. Each Party further understands and acknowledges that the Confidentiality (Section 10), Nondisparagement (Section 9) and the payment schedule of the FLSA Settlement Amount and General Release (Section 4) provisions are material terms of the Agreement and constitutes consideration of the Agreement. Each Party acknowledges and agrees that the nonbreaching Party would be irreparably harmed if the breaching Party breaches either of these provisions and that the amount of damages that would result from such a violation may be difficult or impossible to ascertain.  Therefore, each Party agrees that, if a Party breaches either of the above-referenced provisions of this Agreement, the breaching Party shall be obligated to pay the nonbreaching Party One Thousand Dollars ($1,000.00) for each proven breach as determined by a Court as liquidated damages, and not as a penalty.  This remedy is in addition to any other remedies provided for in law or equity or provided for herein.

**14.    Integration.**  This written Agreement contains the entire agreement of the Parties regarding the settlement of Watson's claims under the FLSA and general release of claims.  This Agreement may not be changed orally but only by an agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. The Parties acknowledge that each Party has not relied upon any representations or promises except as set forth herein and has not relied upon the other Party or its counsel for any advice on or interpretation of the legal or tax implications of this Agreement.  By signing below, the Parties acknowledge receipt of a copy of this Agreement. Each Party has been advised to seek the advice of a Certified Public Accountant or other tax advisor to insure and review the Agreement and to advise each Party concerning how all of the terms and conditions set forth therein may affect their future tax liabilities.  The Parties hereto hereby acknowledge and agree that each has had the opportunity to retain its, his or her own Certified Public Accountants, tax advisor or tax attorney with reference to the tax implications of this Agreement.  Further, the Parties hereby acknowledge that they have not relied upon the tax implications of this Agreement.   Further, the Parties acknowledge and agree that their signatures to this Agreement serve as the acknowledgment that they have read this particular paragraph and that they have had the opportunity to seek independent advice.  All Parties acknowledge that its, his or her attorney provided them no tax advice and they have not relied on any representations of their lawyer in providing tax advice.

**15.    Severability.**  Should any clause of this Agreement be found void by a court of law, with the exception of the releases contained in Section 2 and Section 7 and the requirement that the Company pay Watson and his counsel the FLSA Settlement Amount set forth in Section 1 and the General Release Settlement Amount set forth in Section 3, that fact shall not impair the remainder of this Agreement.

**16.    Governing Law.**  This Agreement shall be interpreted and enforced in accordance with the laws of the State of Georgia.  The parties agree to and hereby do submit to jurisdiction before any state or federal court of record in Cobb County, Georgia, subject to the right, if any, of either party to attempt to remove any claim arising under this Agreement to a United States District Court if said Court has jurisdiction.

**17.    Construction of Agreement.**  The Parties hereby confirm and agree that this Agreement is the result of negotiation and compromise and that in interpreting this Agreement neither party shall be considered to be the drafter of the document, and that the language should not be strictly construed against either party.  Instead, the language of the Agreement should be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

**18.    Binding Effect.**  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, officers, directors, shareholders, employees, agents, parent companies, subsidiaries, divisions, affiliates, related companies, successors, and assigns.

**19.    Expenses.**  The Parties shall pay their own expenses, including, without limitation, any attorney fees, mediation fees, court costs, pleading preparation, legal and expert fees, or other expenses incurred for the negotiation, preparation, and execution of this Agreement, with the exception of the payment of the FLSA Settlement Amount and the General Release Settlement Amount by the Company to Watson and his counsel referenced in Section 1 and Section 3.

**20.    Counterparts.**  This Agreement may be executed in identical counterparts, each of which shall constitute an original of this Agreement. Signatures of the Parties may be exchanged by facsimile or electronically (e.g. Pdf) and same shall be treated as an original.

**21.    Understanding and Voluntariness.** EACH PARTY REPRESENTS AND AGREES THAT THE PARTY HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH THE PARTY'S COUNSEL, THE PARTY HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND THAT THE PARTY IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

**(SIGNATURE PAGE TO FOLLOW)**

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives, and have executed and delivered this Agreement, as an agreement under seal, effective as of the Effective Date.

**Julius Watson**

Signature

Dated: 9/25/2017

**Open Hearts Personal Care Homes, LLC,**

Signature

Dianna A. Clarkson

By:

Managing Principal

Title:

Dated: 9-28-17

**Dianna A. Clarkson**

Signature

Dated: 9-28-17

Page 8 of 8